**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Larry D. RICHARDS, Defendant–
Appellee.**

No. 94–4052.

United States Court of Appeals,
Tenth Circuit.

Oct. 11, 1995.

**1532**

Wayne T. Dance, Assistant United States Attorney (Scott M. Matheson, Jr., United States Attorney, with him on the briefs), Salt Lake City, Utah, for Plaintiff–Appellant.

Loni F. DeLand, McRae & DeLand, Salt Lake City, Utah, for Defendant–Appellee.

Before SEYMOUR, Chief Judge, BALDOCK, Circuit Judge, and VAZQUEZ, District Judge.*

SEYMOUR, Chief Judge.

In the present action, Mr. Richards filed a motion to modify his sentence pursuant to 18 U.S.C. § 3582(c)(2). In so doing, he relies upon amended commentary to the sentencing guidelines which excludes waste water from the definition of "mixture or substance" for purposes of weighing methamphetamine. The district court granted the motion and reduced Mr. Richards' sentence from 188 months to 60 months. On appeal, the government concedes that the commentary changed the applicable guideline range but asserts that the commentary cannot alter the definition of "mixture or substance" for purposes of the statutory minimum sentence. The government thus contends that Mr. Richards' sentence remains subject to a statutory mandatory minimum of 120 months. We affirm.

I.

In 1989, Mr. Richards pled guilty to possession with intent to manufacture methamphetamine, in violation of 21 U.S.C. § 841(a)(1). The statutory penalty provision and the relevant sentencing guideline provide two possible methods for measuring methamphetamine for sentencing purposes: the weight of the pure drug or the weight of the "mixture or substance" containing a detectable amount of the drug. *See* 21 U.S.C. § 841(b)(1);[1] U.S.S.G. § 2D1.1.[2] Mr. Richards possessed 28 grams of pure methamphetamine, which was combined with waste water to form a mixture weighing 32 kilograms. Rec., vol. IV at 14. Consequently, the court sentenced him to 188 months of imprisonment and five years of supervised release.[3]

---

* The Honorable Martha Vazquez, District Judge, District of New Mexico, sitting by designation.

1. Section 841(b)(1)(A)(viii) provides a mandatory minimum of 10 years imprisonment for persons violating section 841(a) who possess "100 grams or more of methamphetamine ... or 1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine."

   Section 841(b)(1)(B)(viii) mandates a minimum sentence of five years for a person convicted under section 841(a) possessing "10 grams or more of methamphetamine ... or 100 grams or more of a mixture or substance containing a detectable amount of methamphetamine."

2. The Sentencing Guidelines determine sentencing levels based on the quantity of the drugs. In addition, they provide that "[i]n the case of a mixture or substance containing ... methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the ... methamphetamine (actual), whichever is greater." U.S.S.G. 2D1.1(c).

3. The court classified Mr. Richards at a level 38 under the Sentencing Guidelines because the total weight of the mixture containing the methamphetamine was 32 kilograms.

Mr. Richards challenged that sentence on three separate occasions. First, he filed a motion to vacate the sentence pursuant to 28 U.S.C. § 2255, which the district court denied. Then he filed a second motion under section 2255. The district court granted this motion, but we reversed on appeal, holding that the second petition constituted an abuse of the writ. *United States v. Richards*, 5 F.3d 1369 (10th Cir.1993). His latest avenue of attack is 18 U.S.C. § 3582(c)(2), which allows a district court to modify the prison term of a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission...."

In the current motion, Mr. Richards alleged and the district court agreed that the amended commentary to section 2D1.1 of the sentencing guidelines mandates that his sentence be reduced from 188 months to 60 months. The commentary now provides that "[m]ixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used." U.S.S.G. § 2D1.1, comment. n. 1. The amended commentary became effective on November 1, 1993, and the Sentencing Commission expressly made it retroactive. U.S.S.G. § 1B1.10(c). The commentary lists "waste water from an illicit laboratory" as an example of a substance that cannot comprise a "mixture or substance." U.S.S.G. § 2D1.1, comment. n. 1.

The government concedes that this amended commentary is applicable to Mr. Richards. It does not contest his assertion that, under the guidelines, his sentence must be based on the amount of pure methamphetamine and that his sentencing level must therefore be reduced from a level 38 to an 18. The government asserts, however, that the Sentencing Commission's decision to exclude waste water from "mixture or substance" does not alter the definition of that phrase in the statutory context. Claiming that we have construed section 841(b) to include waste water as part of a "mixture or substance," the government maintains that Mr. Richards remains subject to a statutory mandatory minimum term of imprisonment of ten years, which trumps the guideline sentence.

■ We review de novo the district court's interpretation of statutory provisions and the sentencing guidelines. *See United States v. Agbai*, 930 F.2d 1447, 1448 (10th Cir.1991).

## II.

The government bases its argument on the notion that amended commentary to the sentencing guidelines cannot change the established judicial interpretation of a statute. Although we agree with this assertion, it is irrelevant to our inquiry because we disagree that we have definitively construed the statute itself to include waste water in its definition of "mixture or substance." The amended commentary may therefore instruct our interpretation of the statute.

The government asserts that the Sentencing Commission does not have authority to supersede our precedent interpreting "mixture or substance" for purposes of section 841(b). *See United States v. Neal*, 46 F.3d 1405, 1409 (7th Cir.1995) (en banc), *cert. granted*, —— U.S. ——, 115 S.Ct. 2576, 132 L.Ed.2d 826 (1995) ("The Commission is without authority to override [Supreme Court precedent].")); *United States v. Palacio*, 4 F.3d 150, 154 (2d Cir.1993) ("[O]nce we have construed [a] statute, we will not reinterpret it in the absence of new guidance from Congress."), *cert. denied*, —— U.S. ——, 114 S.Ct. 1194, 127 L.Ed.2d 543 (1994). This argument rests on the assumption that we have precedent authoritatively construing section 841(b).

In *Neal*, the Seventh Circuit held that an amended sentencing guideline prescribing a presumptive per dose weight of LSD [4] did

4. On November 1, 1993, the following amendment to the Commentary of Sentencing Guidelines became effective: "Because the weights of LSD carrier media vary widely and typically far exceed the weight of the controlled substance itself, the Commission has determined that basing offense levels on the entire weight of the LSD and carrier medium would produce unwarranted disparity among offenses involving the same quantity of actual LSD (but different carrier weights), as well as sentences disproportionate to those other, more dangerous controlled substances, such as PCP. Consequently, in cases involving LSD contained in a carrier medium, the Commission has established a weight per dose of 0.4 milligram for purposes of determining the base offense level." U.S.S.G., App. C, Amendment 488 (1994).

not alter the interpretation of section 841(b) established in *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991). *Neal,* 46 F.3d at 1408–09. *Chapman* construed section 841(b) to include the weight of blotter paper containing "hits" of pure LSD in the measurement of a "mixture or substance." 500 U.S. at 461, 111 S.Ct. at 1925. Citing *Chapman,* the Sentencing Commission itself recognized that its new approach to measuring LSD for guideline purposes "does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence." U.S.S.G. § 2D1.1 backg'd; *see also United States v. Boot,* 25 F.3d 52, 55 (1st Cir.1994) ("[W]e conclude that Congress simply acquiesced in the restrictive reach of Amendment 488 duly noted by the Commission in application note 18.").

Likewise, the Second Circuit in *Palacio* held that the sentencing guidelines' amended definition of "cocaine base" did not alter its conflicting statutory interpretation of the same term established in *United States v. Jackson,* 968 F.2d 158 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 664, 121 L.Ed.2d 589 (1992). *See Palacio,* 4 F.3d at 154–55. Recognizing that the amended commentary would be authoritative in determining base offense levels under the guidelines, the court noted that its own interpretation of the statute in *Jackson* was binding for purposes of determining the mandatory minimum where "our initial construction of [the] statute [was] solely the result of an independent judicial interpretation of a statutory term." *Id.* at 154.

■ We agree that amended commentary to the sentencing guidelines cannot alter any prior, independent construction of section 841(b) we may have made. However, we have never specifically interpreted the statute apart from the guideline to require the inclusion of waste water in its definition of "mixture or substance."

The government concedes that we have interpreted "mixture or substance" only in the context of section 2D1.1 of the sentencing guidelines. Aplt.Br. at 16; *see United States v. Killion,* 7 F.3d 927 (10th Cir.1993) (weight of waste by-products may be used to calculate base offense level under section 2D1.1), *cert. denied,* —— U.S. ——, 114 S.Ct. 1106,

127 L.Ed.2d 418 (1994); *United States v. Dorrough,* 927 F.2d 498, 502 (10th Cir.1991) (same); *United States v. Callihan,* 915 F.2d 1462 (10th Cir.1990) (same). It argues, however, that because " '[m]ixture or substance' as used in [section 2D1.1] has the same meaning as in 21 U.S.C. § 841," U.S.S.G. § 2D1.1 comment. n. 1, we have implicitly settled the statutory issue as well. We are not persuaded.

In *Callihan* and *Dorrough,* we construed "mixture or substance" in section 2D1.1 of the guidelines without any reference or citation to the statute or its construction, merely relying on the Sentencing Commission's admonition that "if any mixture or compound contains any detectable amount of a controlled substance, the entire amount of the mixture or compound shall be considered in measuring the quantity." *Callihan,* 915 F.2d at 1463 (quoting U.S.S.G. § 2D1.1, table n. * (Oct. 1987)); *see also Dorrough,* 927 F.2d at 502 (relying on *Callihan*).

> We later were faced with determining whether the United States Supreme Court decision, *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), supersedes the Tenth Circuit's earlier position that the weight of waste products that are the by-product of a drug manufacturing process but that contain a detectable amount of a controlled substance may be used in calculating a defendant's base offense level under § 2D1.1 of the guidelines. The district court, citing *United States v. Dorrough,* 927 F.2d 498, 502 (10th Cir.1991), and *United States v. Callihan,* 915 F.2d 1462, 1463 (10th Cir. 1990), ruled that the weight of unusable waste by-products containing a detectable amount of P–2–P are to be included for sentencing purposes under the Guidelines. *Killion,* 788 F.Supp. at 1167. Killion, however, maintains that the district court erred in including the weight of waste by-products in calculating his sentence because *Dorrough* and *Callihan* were decided prior to and were effectively overruled by *Chapman.*

*Killion,* 7 F.3d at 929. We held that the Supreme Court's recent interpretation of section 841 in *Chapman* did not overrule *Calli-*

*han* and *Dorrough.* *Id.* at 934. Noting a split among the circuits, we acknowledged the majority of those courts had held that *Chapman* and its emphasis on the marketability of the blotter paper mandated that "sentencing calculations under § 2D1.1 may not be based on the weight of mixtures containing unusable, unmarketable materials." [5] *Id.* at 932 (citing *United States v. Acosta,* 963 F.2d 551 (2d Cir.1992); *United States v. Rodriguez,* 975 F.2d 999 (3d Cir.1992); *United States v. Jennings,* 945 F.2d 129 (6th Cir.1991); *United States v. Johnson,* 999 F.2d 1192 (7th Cir.1993); *United States v. Robins,* 967 F.2d 1387 (9th Cir.1992); *United States v. Rolande–Gabriel,* 938 F.2d 1231 (11th Cir.1991)). Recognizing, however, that we were "bound by the precedent of prior panels absent *en banc* reconsideration or a superceding contrary decision by the Supreme Court," *id.* at 930, we joined the First and Fifth Circuits in "expressly declining to overrule precedent" to the contrary where *Chapman* " 'did not speak' " to the issue. *Id.* at 933 (quoting *United States v. Walker,* 960 F.2d 409, 412 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 443, 121 L.Ed.2d 362 (1992)). We held that the narrow holding in *Chapman* regarding the weight of an LSD carrier medium did not affect our "clear precedent" construing section 2D1.1 to include waste by-products. *Id.* at 934. Rather than interpret the statute, *Killion* merely rejected the notion that the Supreme Court's interpretation of the statute in a different context required us to change our prior construction of the guideline. Moreover, *Killion* expressly stated that "[i]t is the Guideline we are construing." *Id.* at 935. We believe a fair reading of *Killion* is that it was construing section 2D1.1 as required by prior Tenth Circuit cases, not making a definitive judicial interpretation of 21 U.S.C. § 841(B). Thus, we have not independently and authoritatively construed the term "mixture or substance" for purposes of section 841; we merely followed the Sentencing Commission's prior interpretation via its guideline.

■■■ Because we have not ourselves separately interpreted "mixture or substance" for statutory purposes, we are now faced with this task. "Our job in construing statutes is to effectuate the intent reflected in the language of the enactment and the legislative process...." *State of Colorado v. Idarado Mining Co.,* 916 F.2d 1486, 1494 (10th Cir.1990). Although a combination of methamphetamine and waste water seems to fit within a dictionary definition of "mixture," we are not required to " 'produce a result demonstrably at odds with the intentions of its drafters.' " [6] *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); *see also NLRB v. Lion Oil Co.,* 352 U.S. 282, 288, 77 S.Ct. 330, 333–34, 1 L.Ed.2d 331 (1957). The Court said in *Lion Oil Co.:*

> If the above words are read in complete isolation from their context in the Act, such an interpretation is possible. However, "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." Moreover, in *Mastro Plastics* we cautioned against accepting a construction that "would produce incongruous results."

*Id.* at 288, 77 S.Ct. at 334 (quoting *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 285, 286, 76 S.Ct. 349, 359, 359–60, 100 L.Ed. 309 (1956) (citations omitted)).

We follow the approach of the *Chapman* Court, which looked for Congress' intent in both section 841's language and the legisla-

---

5. The six circuits adopting this approach reasoned that "it is logical to include the weight of materials that are marketable or facilitate the marketability of the drug in question, and to exclude the weight of materials that do not." *United States v. Killion,* 7 F.3d 927, 932 (10th Cir.1993). Those courts also based their interpretation on the fact that Congress, in enacting section 841, " 'was concerned with mixtures that will eventually reach the streets—consumable mixtures.' " *Id.* (quoting *United States v. Rodriguez,* 975 F.2d 999, 1006 (3d Cir.1992)).

6. "Thus it is not enough for the judge just to use a dictionary. If he should do no more, he might come out with a result which every sensible man would recognize to be quite the opposite of what was really intended; which would contradict or leave unfulfilled its plain purpose." Learned Hand, *How Far Is a Judge Free in Rendering a Decision?, in The Spirit of Liberty* 103, 106 (Irving Dilliard ed., 1952).

tive history. *Chapman*, 500 U.S. at 460–61, 111 S.Ct. at 1924–25. The Court found that Congress "adopted a 'market-oriented' approach to punishing drug trafficking," which punished according to the quantity distributed "rather than the amount of pure drug involved." *Id.* at 461, 111 S.Ct. at 1925. Accordingly, *Chapman* found that "a carrier medium . . . used to facilitate the distribution of the drug" was rationally included in the weight used to determine punishment. *Id.* at 466, 111 S.Ct. at 1928. Here, *Chapman*'s recognition of Congress' "market-oriented" approach dictates that we not treat unusable drug mixtures as if they were usable.

Five circuits have distinguished between usable and unusable drug mixtures in interpreting "mixture" for purposes of section 841 and section 2D1.1. *See United States v. Acosta*, 963 F.2d 551, 554 (2d Cir.1992) ("[E]ven though the cocaine/creme liqueur may fall within the dictionary definition of 'mixture,' the legislative history convinces us that the weight of the creme liqueur must be excluded."); *United States v. Rodriguez*, 975 F.2d 999, 1007 (3d Cir.1992) ("We find that the usable/unusable differentiation adopted by the Second, Sixth, Ninth, and Eleventh Circuits, rather than the First Circuit approach, best follows the reasoning in *Chapman*."); *United States v. Jennings*, 945 F.2d 129, 136 (6th Cir.1991) ("[I]nterpreting the statute to require inclusion of the entire [mixture] for sentencing in this case would both produce an illogical result and be contrary to the legislative intent underlying the statute."); *United States v. Johnson*, 999 F.2d 1192, 1196 (7th Cir.1993) ("To read the statute or *Chapman* as requiring inclusion of the weight of *all* mixtures, whether or not they are usable, ingestible, or marketable, leads to absurd and irrational results contrary to congressional intent."); *United States v. Rolande–Gabriel*, 938 F.2d 1231, 1236 (11th Cir.1991) ("The Court in *Chapman* found that a plain meaning interpretation of "mixture" does not create an irrational result in the context of LSD and standard carrier mediums; however, in the present case it would be irrational for the court to fail to distinguish between usable and unusable drug mixtures. . . ."). *See also United States v. Palacios–Molina*, 7 F.3d 49, 53–54 (5th Cir.1993) (holding waste liquids in which co-

caine was transported not a "mixture," and distinguishing prior Fifth Circuit authority). *But see United States v. Mahecha–Onofre*, 936 F.2d 623, 625–26 (1st Cir.), *cert. denied*, 502 U.S. 1009, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991); *United States v. Sherrod*, 964 F.2d 1501, 1509–10 (5th Cir.1992); *United States v. Beltran–Felix*, 934 F.2d 1075, 1076 (9th Cir.1991). This usable/unusable distinction has been applied by two circuits in the context of methamphetamine in waste water, *see Jennings*, 945 F.2d 129; *United States v. Newsome*, 998 F.2d 1571 (11th Cir.1993), and by two circuits in the context of cocaine waste water, *see Johnson*, 999 F.2d 1192; *Palacios–Molina*, 7 F.3d 49.

■ This interpretation of "mixture or substances" for statutory purposes also permits us to refer to the guideline definition and "adopt a congruent interpretation of the statutory term as an original matter." *Palacio*, 4 F.3d at 154. Congress created the Sentencing Commission in 1984 and charged it with the task of " 'establish[ing] sentencing policies and practices for the Federal criminal justice system.' " *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1916, 123 L.Ed.2d 598 (1993) (quoting 28 U.S.C. 991(b)(1)). Commentary promulgated by the Commission is authoritative "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, [the relevant] guideline." *Id.* at 1915. Because of its sweeping authority and "significant discretion" in sentencing matters, *Mistretta v. United States*, 488 U.S. 361, 377, 109 S.Ct. 647, 657–58, 102 L.Ed.2d 714 (1989), we may draw on the Commission's interpretations of federal sentencing standards when endeavoring to reach our own interpretation of a sentencing statute.

The Sentencing Commission specifically addressed the current issue in its amended commentary to section 2D1.1, clearly excluding the weight of waste water from the measurement of a "mixture or substance." U.S.S.G. § 2D1.1 comment. n. 1. The commentary provides:

Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such

materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance.

*Id.* The above examples mirror the facts of *Killion* and two First Circuit cases upon which it relies. *Killion,* 7 F.3d at 933 n. 10. In addition, the Sentencing Commission specifically stated its intent to resolve the inter-circuit conflict when it expressed its reasons to Congress for amending the commentary. *See* 58 Fed.Reg. 27148, *27155 (1993); *Killion,* 7 F.3d 927 (waste water); *United States v. Lopez–Gil,* 965 F.2d 1124 (1st Cir.) (cocaine/fiberglass bonded suitcase), *cert. denied,* —— U.S. ——, 113 S.Ct. 484, 121 L.Ed.2d 388 (1992); *United States v. Restrepo–Contreras,* 942 F.2d 96 (1st Cir.1991) (cocaine/beeswax statue), *cert. denied,* 502 U.S. 1066, 112 S.Ct. 955, 117 L.Ed.2d 123 (1992). In fact, *Killion* itself recognized the possibility that the amendment pending before the Commission would soon resolve the issue.[7] 7 F.3d at 931 n. 6 (citing 58 Fed.Reg. 27, 148 (1993) (to be codified at U.S.S.G.App. C, no. 484) (proposed May 6, 1993)).[8]

■ Adopting an interpretation opposite of the Sentencing Commission for purposes of applying the statutory mandatory minimum would lead to unnecessary conflict and confusion. We have recognized the importance of harmonizing the statutory penalty provisions and the sentencing guidelines. *See United States v. Shewmaker,* 936 F.2d 1124, 1128 (10th Cir.1991), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992); *see also United States v. Shorthouse,* 7 F.3d 149, 152 (9th Cir.1993) ("The statutory scheme of sentencing, including the [g]uidelines, must be construed harmoniously as a whole."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1838, 128 L.Ed.2d 466 (1994). Furthermore, because the statutory mandatory minimum automatically becomes the guideline sentence when it is greater than the maximum of the applicable guideline range, *see* U.S.S.G. § 5G1.1(b), allowing waste water to comprise a "mixture or substance" under the statute would effectively nullify the Commission's policy choice.[9] In light of this persuasive authority, we hold that section 841 does not include the weight of waste by-products in the measurement of a "mixture or substance."

■ Citing *United States v. Mueller,* 27 F.3d 494 (10th Cir.1994), the government suggests that we must construe the mandatory minimum statute as it would have been construed at the time of sentencing, before the Sentencing Commission clarified the definition of "mixture or substance." We interpret *Mueller* as foreclosing us from reducing a sentence below a mandatory minimum but

---

**7.** We thus noted in *Killion:*

> We do not address and leave open for consideration the possibility that the split among the circuits with respect to this question has been addressed by the United States Sentencing Commission. *See* 58 Fed.Reg. 27–148 (1993) (to be codified at U.S.S.G.App. C, no. 484 (proposed May 6, 1993)). In the event that the Commission chooses to give previously sentenced defendants the benefit of a new Guideline it is not our intention by this opinion to foreclose Killion from seeking appropriate relief.

> 7 F.3d at 931 n. 6.

**8.** Indeed, when we rejected Mr. Richards' second habeas petition as an abuse of the writ, we noted his argument that "a proposed amendment to the sentencing guidelines will retroactively apply to exclude the weight of the waste products in determining his sentence." *United States v. Richards,* 5 F.3d 1369, 1372 n. 1. We then stated, "If the amendment does become effective and the Sentencing Commission does apply it retroactively, Richards may have a remedy under 18 U.S.C. § 3582(c)(2)." *Id.*

**9.** In establishing the Sentencing Commission, Congress "sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G. Ch. 1, Part A.3 (policy statement).

In adopting the new commentary, the Commission attempted to implement this policy by eliminating highly disparate sentences for the same quantity of drugs. For example, prior to the new commentary, if the beeswax statue and the acrylic suitcase contained the same amount of cocaine but the suitcase weighed considerably more, the defendant with the suitcase would receive a much higher sentence. Under the new commentary, the defendants would be classified in the same sentencing range. If we adopt a conflicting interpretation of "mixture or substance," the mandatory minimum would still impose a significantly higher sentence on the defendant with the suitcase. *See also Chapman v. United States,* 500 U.S. 453, 458 n. 2, 111 S.Ct. 1919, 1924 n. 2, 114 L.Ed.2d 524 (1991) (detailing disparate sentences imposed under *Chapman* ).

not mandating how the mandatory minimum statute will be interpreted. In *Mueller,* an LSD case, we were bound by *Chapman's* interpretation of the mandatory minimum statute.[10] *Id.* at 496. Here, we are free to interpret the statute as an issue of first impression. We are not required to interpret a statute in accordance with an outdated guideline and in conflict with the current, applicable guideline. We thus construe "mixture or substance" in section 841 to be consistent with the guideline commentary as revised. In so doing, we join the majority of our sister circuits in adopting Congress' market-oriented approach to drug sentencing as articulated in *Chapman.*

We AFFIRM the judgment of the district court.

BALDOCK, Circuit Judge, dissenting.

I am unable to join the majority's interpretation of 21 U.S.C. § 841's terms "mixture or substance" in the instant case. The majority concludes we are free to interpret § 841 as an issue of first impression because: (1) we have not previously done so; and (2) the Supreme Court's interpretation of "mixture or substance" for purposes of § 841 in *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991) applies only to LSD cases. Op. at 1538 n. 10. I conclude we are bound by the Supreme Court's authoritative interpretation of "mixture or substance" in all of § 841. *See Chapman,* 500 U.S. at 461–62, 111 S.Ct. at 1925–26. Further, the majority's statutory analysis is flawed because it contravenes settled rules of statutory construction. I therefore respectfully dissent.

I.

In *Chapman,* the Supreme Court defined the terms "mixture or substance" for purposes of § 841. Specifically, the Court confronted the question whether the weight of blotter paper containing LSD or the weight of pure LSD alone should be used in determining a defendant's eligibility for a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(v). Under § 841(b)(1)(B)(v), a defendant is subject to a mandatory minimum five year term of imprisonment if he,

*inter alia,* distributes "1 gram or more of a *mixture or substance* containing a detectable amount of" LSD. 21 U.S.C. § 841(b)(1)(B)(v) (emphasis added). The Supreme Court had to determine, therefore, whether the blotter paper and LSD distributed by the defendants constituted a "mixture or substance" for purposes of the statute.

The Court noted that, in addition to LSD, § 841 uses the terms "mixture or substance" in connection with a number of controlled substances, but does not define the terms. The Court therefore recognized that § 841 repeats the phrase "mixture or substance" numerous times, including in reference to methamphetamine. Although the Supreme Court interpreted "mixture or substance" in the context of a case involving LSD, it interpreted a statutory phrase used throughout § 841. Analyzing § 841 using time-honored principles of statutory construction, the Court concluded that because the statute did not define "mixture or substance," the words had to be given their ordinary meaning. The Court determined:

> A "mixture" is defined to include "a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence." Webster's Third New International Dictionary 1449 (1986). A "mixture" may also consist of two substances blended together so that the particles of one are diffused among the particles of the other. 9 Oxford English Dictionary 921 (2d ed. 1989).

*Chapman,* 500 U.S. at 462, 111 S.Ct. at 1926.

Applying these definitions, the Court concluded that blotter paper and LSD constitute a "mixture" under the plain meaning of that term because the LSD crystals are diffused among the fibers of the blotter paper. *Id.* Because the blotter paper and LSD weighed 5.7 grams, the defendants distributed "1 gram or more of a mixture or substance containing a detectable amount of" LSD. As a result, the defendants were subject to § 841(b)(1)(B)(v)'s mandatory minimum five year term of imprisonment.

The Supreme Court therefore defined the terms "mixture or substance" in § 841 using

**10.** We have held that *Chapman* was deciding   only the LSD issue. *Killion,* 7 F.3d at 934.

a familiar tool of construction: the plain language of the statute. In so doing, the Court authoritatively determined that the words "mixture or substance" wherever appearing in § 841 have their ordinary dictionary meanings. Thus, for purposes of § 841, a "mixture" is "two substances blended together so that the particles of one are diffused among the particles of the other." *Chapman*, 500 U.S. at 462, 111 S.Ct. at 1926 (citing 9 Oxford English Dictionary 921 (2d ed. 1989)).

Applying the plain meaning of "mixture" set forth in *Chapman* to the instant case, waste water and methamphetamine constitute "two substances blended together so that the particles of one are diffused among the particles of the other." *Id.* Waste water and methamphetamine, therefore, constitute a "mixture or substance" for purposes of § 841. *See id.* Defendant possessed a thirty-two kilogram mixture of waste water and methamphetamine, containing twenty-eight grams of pure methamphetamine. Thus, Defendant possessed "1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine." 21 U.S.C. § 841(b)(1)(A)(viii). Defendant is therefore subject to a mandatory minimum sentence of ten years. *Id.* Because the statutorily required minimum sentence is greater than the maximum sentence under the applicable guideline range, Defendant must be sentenced to a minimum ten years imprisonment. U.S.S.G. § 5G1.1(b); *see United States v. Campbell*, 995 F.2d 173, 175 (10th Cir.1993) ("Statutes trump guidelines where the two conflict.").

The majority, however, concludes that *Chapman* does not control the instant case. Specifically, the majority asserts that in *United States v. Killion*, 7 F.3d 927 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1106, 127 L.Ed.2d 418 (1994), we held that *Chapman* "decid[ed] only the LSD issue." Op. at 1537 n. 9. This conclusion misreads *Killion* and consequently rejects controlling Supreme Court precedent.

In *Killion*, government agents found 66.3 grams of a yellow liquid containing 52.9 grams of Phenyl–2–Propanone ("P–2–P") and 17.5 grams of a dark brown substance containing an unquantifiable trace of P–2–P at defendant's house. Thus, the agents found a total of 83.8 grams of a substance containing P–2–P. The defendant pled guilty to manufacturing 83.8 grams of P–2–P. In computing the defendant's base offense level under U.S.S.G. § 2D1.1, the district court included the entire 83.8 gram weight of the yellow liquid and dark brown substance. The defendant challenged the district court's computation of his base offense level, contending that the court erroneously included the weight of unusable waste by-products in the yellow liquid and dark brown substance in determining his base offense level. The court rejected the defendant's challenge, citing Tenth Circuit precedent and holding that the entire 83.8 gram weight should be used because the yellow liquid and dark brown substance contained a "detectable amount" of P–2–P. *Id.* at 931.

On appeal, we noted that our precedent construed § 2D1.1 as requiring the entire weight of a mixture containing a detectable amount of a controlled substance be used in determining a defendant's base offense level. The defendant urged us to reconsider our position in light of *Chapman*. Specifically, the defendant contended *Chapman* adopted a "market-oriented" approach, whereby a defendant is punished only for usable, marketable parts of a drug mixture. We refused to depart from our precedent, however. We concluded that *Chapman*'s "market-oriented" approach discussion [1] was specifically di-

---

1. In *Chapman*, the Court noted that:

> Congress adopted a "market-oriented" approach to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence. To implement that principle, Congress set mandatory minimum sentences corresponding to the weight of a "mixture or substance containing a detectable amount of" the various

controlled substances, including LSD. It intended the penalties for drug trafficking to be graduated according to the weight of the drugs in whatever form they were found—cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level.

*Chapman*, 500 U.S. at 461, 111 S.Ct. at 1925 (citation omitted). In *Killion*, we held that the Court's "market-oriented" approach discussion applied only in the context of the LSD question before the Court.

rected to the LSD sentencing issue before the Court.

Contrary to the majority's assertion, however, we did not conclude that *Chapman*'s plain meaning interpretation of "mixture or substance" was limited to LSD cases. *Id.* at 931, 934. Instead, we noted that the Court "analyzed the meaning of the term 'mixture or substance' *in 21 U.S.C. § 841*"—*i.e.*, for purposes of the entire statute. *Id.* at 931 (emphasis added). Thus, the majority's conclusion that "[w]e have held that *Chapman* was deciding only the LSD issue," op. at 1538 n. 10, is overbroad and erroneous as applied to the instant case. As a simple reading of *Killion* demonstrates, we have already recognized that *Chapman* sets forth the controlling definition of the terms "mixture or substance" wherever they appear in § 841. *See id.* at 931. Because the majority misreads *Killion*, it fails to apply controlling Supreme Court precedent in the instant case and thereby reaches the wrong result.

## II.

In addition to ignoring controlling precedent, the majority's interpretation of § 841 contravenes elementary principles of statutory construction. In interpreting statutes, our first and primary task is to "determine *congressional intent*, using 'traditional tools of statutory construction.'" *NLRB v. United Food & Commercial Workers Union*, 484 U.S. 112, 123, 108 S.Ct. 413, 421, 98 L.Ed.2d 429 (1988) (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446, 107 S.Ct. 1207, 1221, 94 L.Ed.2d 434 (1987)) (emphasis added). We examine the plain language of the statute. *Phillips Petroleum Co. v. Lujan*, 4 F.3d 858, 861 (10th Cir.1993). We assume that Congress' intent is expressed in the ordinary meaning of the words it uses. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 661–62, 83 L.Ed.2d 582 (1985). Thus, when the statute does not define particular terms, the terms "must be given their ordinary meaning." *Chapman*, 500 U.S. at 462, 111 S.Ct. at 1925; *see also Bartlett v. Martin Marietta Operations Support, Inc.*, 38 F.3d 514, 518 (10th Cir.1994) ("The court is obliged to give terms their plain meaning whenever possible."). We give "full effect" to the plain meaning of the words chosen by Congress. *United States v.*

*Turkette*, 452 U.S. 576, 593, 101 S.Ct. 2524, 2533–34, 69 L.Ed.2d 246 (1981). "[W]e will not restrict the plain meaning of the language chosen by Congress absent 'clearly expressed legislative intent to the contrary.'" *Johns v. Stewart*, 57 F.3d 1544, 1555 (10th Cir.1995) (quoting *Turkette*, 452 U.S. at 580, 101 S.Ct. at 2527). "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). If Congress' intent is clear from the statutory language, we give effect to that intent, our inquiry is complete, and we do not turn to an agency construction. *Chevron, U.S.A. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984).

Applying these principles, we first examine the plain language of § 841. Because § 841 does not define the terms "mixture or substance," they "must be given their ordinary meaning." *Chapman*, 500 U.S. at 462, 111 S.Ct. at 1925. Moreover, we must give "full effect" to the plain meaning of § 841's terms "mixture or substance" and not restrict their plain definitional scope unless we: (1) find clearly expressed congressional intent to the contrary, *Turkette*, 452 U.S. at 580, 101 S.Ct. at 2527; or (2) conclude that this is a "rare case" where a literal application of § 841's terms "will produce a result demonstrably at odds with the intentions of its drafters." *Ron Pair Enters.*, 489 U.S. at 242, 109 S.Ct. at 1031.

The majority concludes this is a "rare case" where a literal application of § 841's terms will produce a result demonstrably at odds with Congress' intentions. The majority, therefore, must demonstrate that Congress did not intend § 841 to convey its literal meaning—*i.e.*, instead of "a mixture or substance containing a detectable amount of" a controlled substance, the majority must show that Congress really intended § 841 to read "a [usable] mixture or substance con-

taining a detectable amount of" a controlled substance. To support its contention that the word "usable" should be read into the statute, the majority cites *Chapman*'s discussion of the legislative history to § 841. Specifically, the majority reasons that "*Chapman*'s recognition of Congress' 'market-oriented' approach dictates that we not treat unusable drug mixtures as if they were usable." Op. at 11.

In *Chapman,* the Court examined the legislative history to § 841 and concluded that Congress adopted a " 'market-oriented' approach to punishing drug trafficking." *Chapman,* 500 U.S. at 461, 111 S.Ct. at 1925. The Court noted, however, that under the "market-oriented" approach adopted by Congress "the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence." *Id.* (citing H.R.Rep. No. 99–845, pt. 1, 11–12, 17 (1986)) (emphasis added). Based upon its review of the legislative history, the Court concluded that Congress intended "penalties for drug trafficking to be graduated according to the weight of the drugs in whatever form they were found—cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level." *Id.* (emphasis added). Thus, the Court recognized that Congress adopted the market-oriented approach because the reality of drug-trafficking is that drugs are often combined with other substances in a mixture. Congress intended to punish drug offenders who possess large quantities of drug mixtures more severely. Neither the Court, nor Congress, however, gave any indication that drug offenders should be sentenced for the total quantity of only usable drug mixtures. Thus, to the extent the circuit court cases cited by the majority draw a usable/unusable (marketable/unmarketable) distinction in interpreting § 841, their reading is not based in *Chapman* or in accord with clearly expressed congressional intent.[2]

An examination of *Chapman* and its discussion of the "market-oriented" approach reveals the Court did not find legislative history restricting the plain meaning of § 841's terms "mixture or substance" to "usable" drug mixtures. The majority opinion in this case fails to identify legislative history evidencing such congressional intent. Indeed, the Supreme Court noted in *Chapman* after examining § 841's legislative history that, under the "market-oriented" approach, Congress intended to punish drug traffickers for the "total quantity" of drugs distributed "in whatever form they were found." *Id.* (emphasis added). *Chapman*'s discussion of the "market-oriented" approach, therefore, demonstrates the fallacy of the majority's conclusion that Congress intended to limit the plain meaning of the terms "mixture or substance" to "usable" drug mixtures. The legislative history to § 841 underscores the congressional intent expressed in the plain language of the statute to punish drug traffickers for the "total quantity" of drugs distributed "in whatever form they [are] found." *Id.* Accordingly, Congress provided no restrictions on the phrase "mixture or substance" in § 841(b). *See* 21 U.S.C. § 841(b). Thus, the discussion in *Chapman* of § 841's legislative history and Congress' "market-oriented" approach contradicts the majority's

---

**2.** The majority seeks to buttress its reading of § 841 by citing to other circuits that have drawn a usable/unusable distinction in applying § 841. *See United States v. Acosta,* 963 F.2d 551, 554 (2d Cir.1992); *United States v. Rodriguez,* 975 F.2d 999, 1007 (3d Cir.1992); *United States v. Jennings,* 945 F.2d 129, 136 (6th Cir.1991); *United States v. Johnson,* 999 F.2d 1192, 1196 (7th Cir. 1993); *United States v. Rolande–Gabriel,* 938 F.2d 1231, 1236 (11th Cir.1991). None of these cases, however, cite language in § 841 or its legislative history that expresses that Congress intended to limit the plain definitional scope of § 841's terms "mixture or substance" to usable drug mixtures. Instead, these cases limit the plain scope of § 841 to usable drug mixtures on the grounds that Congress intended uniformity and proportionality in sentencing and therefore could not have intended unusable drug mixtures to be punished under § 841 because of the absurd results that follow from such a conclusion. *See, e.g., Acosta,* 963 F.2d at 554.

The Supreme Court, however, rejected the argument that "mixture or substance" should be read to exclude carrier mediums to avoid illogical results in *Chapman. See Chapman,* 500 U.S. at 458–59, 111 S.Ct. at 1923–24. Moreover, the analysis in *Acosta* and the other cases is flawed because it is not the function of the judiciary to re-write congressional statutes to fit our conception of what is the best or right sentencing policy. Congress is aware of the sentencing discrepancies that may follow from its sentencing scheme and will rectify those discrepancies if it so chooses.

restrictive interpretation of § 841 in this case.

Because there is no record of congressional intent to otherwise restrict the plain definitional scope of § 841's terms, we apply the terms in accord with their plain, dictionary meanings. *Chapman,* 500 U.S. at 462, 111 S.Ct. at 1925–26; *Turkette,* 452 U.S. at 580, 101 S.Ct. at 2527. Under the plain meaning of "mixture," waste water and methamphetamine constitute "two substances blended together so that the particles of one are diffused among the particles of the other." *Chapman,* 500 U.S. at 462, 111 S.Ct. at 1926 (quoting 9 Oxford English Dictionary at 921). Waste water and methamphetamine therefore qualify as a "mixture or substance" for purposes of § 841 because the particles of the methamphetamine are diffused among the particles of the waste water. As a result, Defendant possessed 32 kilograms of a "mixture or substance containing a detectable amount of methamphetamine." 21 U.S.C. § 841(b)(1)(A)(viii). He is therefore subject to § 841's mandatory minimum ten years imprisonment. Because the statutorily required minimum sentence is greater than the maximum sentence under the applicable guideline range, Defendant must be sentenced to a minimum ten years imprisonment. U.S.S.G. § 5G1.1(b); *Campbell,* 995 F.2d at 175.

### III.

Instead of applying time-honored principles of statutory construction and focusing on congressional intent, the majority applies a novel method of construction called the "congruent" approach, which focuses on the sentencing commission's intent. Op. at 13. Under this "congruent" approach, the majority interprets the term "mixture or substance" in § 841 to exclude waste water in order to conform to sentencing guidelines commentary. In so doing, the majority ignores congressional intent, which is clear from the plain language of § 841, and essentially allows the Sentencing Commission to interpret a federal statute. This approach abdicates our uniquely judicial task to "say what the law is," *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803), and is flawed in several respects.

First, if congressional intent is clear from the face of a statute, we simply apply the statute in accord with that intent and do not reference the views of an agency. *Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82. Moreover, in any event, deference to commentary promulgated by the Sentencing Commission is unwarranted because commentary is not the Commission's construction of a statute that it administers. *See Chevron,* 467 U.S. at 842–43, 104 S.Ct. at 2781–82 (court defers to agency construction of statute that it administers when congressional intent is unclear). Commentary performs three functions: (1) it interprets the guidelines and explains their application; (2) it suggests circumstances warranting departure from the guidelines; and (3) it provides background information to the guidelines. U.S.S.G. § 1B1.7. As such, commentary is "akin to an agency's interpretation of its own legislative rules." *Stinson v. United States,* — U.S. —, —, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993). Commentary does not, however, interpret federal statutes. *See* U.S.S.G. § 1B1.7. Thus, while commentary is authoritative and binding with respect to the meaning and application of the guidelines, *Stinson,* — U.S. at —, 113 S.Ct. at 1919, it is not authoritative as to the meaning of a federal statute and is therefore entitled to no deference by this court in statutory interpretation. *See Smith v. United States,* — U.S. —, —, 113 S.Ct. 2050, 2055, 124 L.Ed.2d 138 (1993) (dissent's assumption that the sentencing guidelines are relevant to the interpretation of a federal criminal statute is "dubious"); *United States v. Palacio,* 4 F.3d 150, 155 (2d Cir.1993) ("[U]nless the Sentencing Commission is construing its own authority as an agency . . . its view of the substantive meaning of a criminal statute is unlikely to be entitled to any deference."), *cert. denied,* — U.S. —, 114 S.Ct. 1194, 127 L.Ed.2d 543 (1994).

Second, the majority's interpretation of "mixture or substance" under its "congruent" approach ignores settled canons of construction and defies common sense. Under the majority's rationale, "mixture or substance" has one meaning for LSD cases (*Chapman* ) and another meaning for methamphetamine cases (the Sentencing Commission's views).

Under elementary maxims of construction, however, "[w]e must presume that words used more than once in the same statute have the same meaning." *Boise Cascade Corp. v. United States EPA*, 942 F.2d 1427, 1432 (9th Cir.1991) (citing *Sutherland Stat. Const.* §§ 46.05, 46.06 (4th ed. 1984)). The majority points to nothing in the statute, its legislative history, or interpretive case law to indicate that Congress intended the words "mixture or substance" have different definitions in different subsections of § 841. Indeed, an eclectic definitional scheme, whereby an identical phrase means what the dictionary says in one section of § 841 and what guideline commentary says in another, cannot be what Congress intended.

Third, the majority's central focus on the "congruent" approach and sentencing commission intent in interpreting § 841, instead of on settled principles of statutory contruction and congressional intent implicates separation of powers concerns. Principles of statutory construction ensure that the courts, in exercising their unique role to declare what the law means, properly focus upon ascertaining the intent of Congress. Contrary to the majority's approach, it is not the will of the Sentencing Commission—"an independent commission in the Judicial Branch of the United States," 28 U.S.C. § 991(a)—or of this court, that holds paramount importance in statutory interpretation. Instead, it is the intent and will of Congress—the democratic body representing the will of the people—that counts. By applying principles of statutory interpretation, we ensure that we interpret and apply statutes in accord with congressional intent, regardless of what we think the statutes should say, and thus properly respect the unique roles of Congress and the federal courts in our trilateral system.

In sum, by following *Chapman* or applying time-honored principles of statutory interpretation, the majority would reach the same and right result—*i.e.*, it would apply the plain meaning of "mixture or substance" to the facts and conclude Defendant is subject to a mandatory minimum ten years imprisonment. Instead, the majority disregards Supreme Court precedent and contravenes principles of statutory construction. The net effect of the majority's decision results in the phrase "mixture or substance" in § 841 having one meaning in LSD cases and another meaning in methamphetamine cases. It will be interesting to see how "mixture or substance" will be defined in the six other subsections of § 841(b)(1)(A), which deal with heroin, cocaine, PCP and other controlled substances. *See* 21 U.S.C. §§ 841(b)(1)(A)(i)–(iv), (vi), (vii).

Because the district court erred by failing to sentence Defendant to a minimum of ten years imprisonment in accord with the applicable statutory mandatory minimum under § 841(b)(1)(A)(viii), I would reverse. I therefore respectfully dissent.