UNITED STATES of America, Appellee,

v.

Gustavo SALGADO–MOLINA, Defendant–Appellant.

No. 1033, Docket 91–1644.

United States Court of Appeals, Second Circuit.

Argued March 6, 1992.

Decided May 29, 1992.

Marjorie M. Smith, Federal Defender Services Appeals Unit, New York City, for defendant-appellant.

Mark O. Wasserman, Asst. U.S. Atty., (Andrew J. Maloney, U.S. Atty., Peter A. Norling, Asst. U.S. Atty., E.D.N.Y., of counsel), for appellee.

Before: PIERCE and ALTIMARI, Circuit Judges, and KEENAN, District Judge.*

* The Honorable John F. Keenan, United States District Judge for the Southern District of New York, sitting by designation.

PER CURIAM:

The issue presented on this appeal is whether the Sentencing Guidelines require that the weight of an unusable portion of a mixture, which makes the drugs uningestible and unmarketable, be included in the overall weight calculation for sentencing purposes. In *United States v. Acosta*, 963 F.2d 551 (2d Cir.1992), we held that "it was improper to include the weight of the creme liqueur in the weight calculation." *Id.* at 556. Accordingly, for the reasons set forth in *Acosta*, we reverse and remand.

The underlying facts of this case are undisputed. On March 16, 1991, Salgado–Molina arrived at the John F. Kennedy International Airport aboard Avianca Airways Flight No. 020 from Bogota, Colombia. During a routine border search at the airport, United States Customs Inspectors noticed that Salgado–Molina was carrying six bottles of what appeared to be liqueur, and that the bottles' tops seemed to have been tampered with. The Inspectors seized the bottles, field-tested the contents, and determined that the liquid contained cocaine. The Inspectors then placed defendant under arrest.

On May 16, 1991, the Drug Enforcement Administration completed a lab analysis report. The report stated that the gross weight of the cocaine, i.e. the weight of the cocaine plus the weight of the liqueur plus the weight of the six bottles, was 8.424 kilograms. The net weight of the cocaine mixed with the liquid was 4.940 kilograms, and the net weight of the cocaine in powder form was 1.739 kilograms.

In sentencing Salgado–Molina, the district court concluded that the entire contents of the liqueur bottles was a mixture and that therefore the combined weight of the cocaine and liquid mixture (4.940 kilograms) was the relevant weight in determining defendant's sentence. The court therefore accepted the Pre–Sentence Report's computation of 30 as the base offense level. *See* 21 U.S.C. § 952(a) and Guideline § 2D1.1(a)(3). The court afforded defendant a two-level downward departure for acceptance of responsibility and another two-level downward adjustment for minimal role in the offense, bringing defendant's adjusted base offense level to 26, with a corresponding Guideline range of 63 to 78 months.

At sentencing, defendant argued that the weight of the liquid should be excluded from the sentencing calculus and that his sentence should be based on the weight of the cocaine in its powder form. He argued that because the cocaine alone weighed 1.739 kilograms, that his base offense level should have been 26, not 30, which would have resulted in an adjusted offense level of 22 (41–51 months) after the four-level reduction for acceptance of responsibility and minimal role. Relying on the Supreme Court's decision in *Chapman v. United States*, —— U.S. ——, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), the sentencing court reluctantly rejected this argument. Although he thought the resulting sentence excessive, Judge Dearie concluded that the entire contents of the liqueur bottles was a "mixture" as referred to in the Drug Quantity Table of Sentencing Guideline 2D1.1[1] and therefore determined that *Chapman* compelled a decision in the Government's favor.

As we found in *Acosta*, *Chapman* does not mandate the inclusion of the uningestible liquid in the weight calculation. *Acosta*, at 554. *Chapman* decided that it was Congress's intent to measure drug quantities "according to the 'street weight' of the drugs in the diluted form in which they are sold," and the Court recognized that its analysis might not apply where the defendant had not used a "standard [drug] carrier." *Chapman*, 111 S.Ct. at 1927–28, 1928. As the *Chapman* Court observed,

Congress adopted a 'market-oriented' approach to punishing drug trafficking [in the Anti–Drug Abuse statute], under which the *total quantity of what is distributed*, rather than the amount of pure drug involved, is used to determine the length of the sentence.... It intended the penalties for drug trafficking to be graduated according to the weight of the drugs in whatever form they [are]

---

1. The weight of the controlled substance set forth in the table "refers to the entire weight of any mixture or substance containing a detectable amount of the controlled substance." Drug Quantity Table of Sentencing Guideline 2D1.1 at *.

found—cut or uncut, pure or impure, *ready for wholesale or ready for distribution at the retail level.*

*Id.* 111 S.Ct. at 1925 (emphasis added). As the government acknowledged below, the mixture of cocaine involved here was neither usable nor ingestible without a chemical extraction process, and therefore it was not ready for either retail or wholesale distribution. Therefore, "it is not unreasonable to consider the liquid waste as the functional equivalent of packaging material, which quite clearly is not to be included in the weight calculation." *Acosta,* at 554 (citations omitted).

At sentencing, the district court observed that under a broad application of *Chapman,* if one could "float a few kilograms of cocaine across the ocean" and "extract the cocaine from the ocean," the weight of the entire Atlantic Ocean would be used to compute that defendant's base offense level. Including the liquid in this case as a measure of punishment is no more rational than including the weight of the Atlantic Ocean in sentencing the hypothetical ocean smuggler. The resulting sentence would bear no relationship to the defendant's blameworthiness or to any public policy. As the Eleventh Circuit observed in *United States v. Rolande-Gabriel,* 938 F.2d 1231, 1237 (11th Cir.1991), it is "fundamentally absurd to give an individual a more severe sentence for a mixture which is unusable and not ready for retail or wholesale distribution while persons with usable mixtures would receive far less severe sentences."

Reversed and remanded.