**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Larry D. RICHARDS, Defendant–
Appellee.**

No. 94–4052.

United States Court of Appeals,
Tenth Circuit.

June 28, 1996.

Wayne T. Dance, Assistant United States Attorney, Scott M. Matheson, Jr., United States Attorney, Salt Lake City, Utah, for Plaintiff–Appellant.

Loni F. DeLand, McRae & DeLand, Salt Lake City, Utah, for Defendant–Appellee.

Before SEYMOUR, Chief Judge, and PORFILIO, ANDERSON, BALDOCK, BRORBY, EBEL, KELLY, HENRY, BRISCOE, LUCERO, and MURPHY, Circuit Judges.*

---

* Judge Tacha took no part in the consideration or decision of this case.

ON REHEARING EN BANC

BALDOCK, Circuit Judge.

This case requires us to determine whether a combination of liquid by-products and methamphetamine constitute a "mixture or substance containing a detectable amount of methamphetamine" for purposes of sentencing under 21 U.S.C. § 841(b). Applied to the facts, we must decide whether thirty-two kilograms of liquid by-products containing methamphetamine, or twenty-eight grams of pure methamphetamine alone, should be used to calculate Defendant Larry D. Richards' sentence under § 841(b). We conclude that the plain language of § 841(b), and Supreme Court precedent, require us to use the entire thirty-two kilogram weight of the methamphetamine and liquid by-product mixture to calculate Defendant's sentence. We accordingly reverse and remand.

## I.

Methamphetamine is commonly synthesized via a process that yields methamphetamine in a liquid solution. Operators of clandestine methamphetamine laboratories attempt to extract the pure methamphetamine from the liquid mixture. Defendant possessed thirty-two kilograms of a liquid mixture containing twenty-eight grams of pure methamphetamine. Defendant sought to extract the pure methamphetamine from the liquid mixture. Before he was able to do so, law enforcement officials seized the liquid mixture and arrested Defendant.

Defendant pleaded guilty to possession of 1000 grams or more of a liquid mixture containing a detectable amount of methamphetamine, with intent to manufacture methamphetamine in powder form, 21 U.S.C. § 841(a), (b)(1)(A)(viii). The presentence report determined that the thirty-two kilogram liquid mixture contained twenty-eight grams of pure methamphetamine. Applying U.S.S.G. § 2D1.1, the court sentenced Defendant based upon the entire thirty-two kilogram liquid mixture to 188 months imprisonment. *See* U.S.S.G. § 2D1.1 application

note * ("In the case of a mixture or substance containing ... methamphetamine, use the offense level determined by the entire weight of the mixture or substance or the offense level determined by the weight of the pure ... methamphetamine, whichever is greater.").

Defendant did not appeal his sentence. Instead, he filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255. The district court denied the motion. Defendant filed a second motion under § 2255. In his second motion, Defendant argued that the district court misapplied the sentencing guidelines by including both the weight of liquid by-products and extractable methamphetamine in determining his base offense level. The district court granted this motion.

On appeal, we concluded that Defendant's second petition constituted an abuse of the writ and reversed. *United States v. Richards*, 5 F.3d 1369 (10th Cir.1993). We noted, however, that the United States Sentencing Commission had proposed an amendment to § 2D1.1, which if adopted and applied retroactively, might afford Defendant relief under 18 U.S.C. § 3582(c)(2).[1]

Effective November 1, 1993, the Sentencing Commission amended the commentary following U.S.S.G. § 2D1.1 and defined "mixture or substance" *for purposes of the Sentencing Guidelines* as follows:

"Mixture or substance" as used in this guideline has the same meaning as in 21 U.S.C. § 841, except as expressly provided. Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include ... waste water from an illicit laboratory used to manufacture a controlled substance.

U.S.S.G. § 2D1.1 application note 1. The Sentencing Commission expressly made this amendment retroactive. U.S.S.G. § 1B1.10(c).

Thereafter, Defendant filed the instant motion for modification of sentence under

---

1. Under § 3582(c)(2), a court may modify a term of imprisonment "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission."

§ 3582(c)(2). Defendant argued that the amended commentary to § 2D1.1 mandated that the court exclude the liquid by-products and recalculate his sentence based only upon the twenty-eight grams of pure methamphetamine. Defendant maintained that the district court must accordingly reduce his 188 month sentence to 60 months. 21 U.S.C. § 841(b)(1)(B)(viii) (providing a mandatory minimum five-year term of imprisonment for possession with intent to manufacture "10 grams or more of methamphetamine.").

The government conceded that the amended commentary applied to Defendant and that the court could reduce Defendant's sentence. The government argued, however, that Defendant was still subject to a mandatory minimum ten-year term of imprisonment under 21 U.S.C. § 841(b)(1)(A)(viii). The government maintained that the amended commentary to § 2D1.1 did not alter § 841's definition of "mixture or substance." Applying the statutory definition the government asserted that Defendant possessed thirty-two kilograms of a "mixture or substance containing a detectable amount of methamphetamine," and therefore remained subject to a mandatory minimum ten-year term of imprisonment. 21 U.S.C. § 841(b)(1)(A)(viii). The government therefore maintained that the court could not reduce Defendant's sentence below ten years, or 120 months.

The district court agreed with Defendant. The court reasoned that § 2D1.1 and § 841 should "be interpreted harmoniously where reasonably possible," because, to give the statute a different meaning than the guideline would produce illogical and inconsistent results. Thus, the court interpreted § 841's terms "mixture or substance" consistent with the amended guidelines' definition and sentenced Defendant based on twenty-eight grams of methamphetamine, instead of thirty-two kilograms of a mixture containing methamphetamine. The court granted Defendant's motion to modify sentence, and re-sentenced him to 60 months imprisonment. A divided panel of this court affirmed, holding that the Supreme Court's "recognition of

Congress' 'market-oriented' approach dictates that we not treat unusable drug mixtures as if they were usable"; and that, under a "congruent approach," § 841 should be interpreted consistent with the construction provided by the Sentencing Commission. *United States v. Richards,* 67 F.3d 1531, 1536 (10th Cir.1995). We granted en banc review to determine whether the Sentencing Commission's amended construction of "mixture or substance" authoritatively defines the terms "mixture or substance" in § 841, or whether the statutory terms retain their plain meaning as construed by the Supreme Court in *Chapman v. United States,* 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991).

## II.

The government maintains the district court erred by interpreting § 841's terms "mixture or substance" consistent with the Sentencing Commission's definition set forth in the amended commentary to § 2D1.1. The government contends that the Supreme Court defined § 841's terms "mixture or substance" in *Chapman* in accord with the plain, dictionary meanings of the words. The government argues that the liquid solution containing methamphetamine constitutes a "mixture" under the plain meaning of the word. Thus, the government asserts the district court erred in reducing Defendant's sentence because Defendant possessed thirty-two kilograms of a "mixture or substance containing a detectable amount of methamphetamine," within the meaning of § 841(b)(1)(A)(viii). Accordingly, the government asserts Defendant remains subject to a ten-year mandatory minimum sentence.

Defendant responds that the district court correctly construed § 841's terms "mixture or substance" in accord with the Sentencing Commission's amended guidelines definition. Defendant maintains that the unusable and unmarketable portion of the drug mixtures should be excluded from the calculation of his statutory sentence. Defendant relies on the rulings of other circuits that have embraced this "marketable" approach.[2] Applied to the

---

2. The Second, Third, Sixth, Seventh, and Eleventh Circuits have embraced the "marketable" approach. *See, e.g., United States v. Acosta,* 963

F.2d 551, 553–54 (2d Cir.1992) (in determining defendant's sentence under § 2D1.1, exclude weight of unusable creme liqueur portion in

facts, Defendant maintains that he should be sentenced for the twenty-eight grams of methamphetamine, not the unmarketable thirty-two kilograms of liquid.

### A.

The parties' arguments require us to interpret the terms "mixture or substance" in 21 U.S.C. § 841(b). Congress did not define "mixture or substance" in § 841. We need not perform our own interpretive analysis, however. The Supreme Court has authoritatively construed the terms in *Chapman*.

In *Chapman*, the Court confronted the question whether the weight of blotter paper containing LSD or the weight of pure LSD alone should be used to determine a defendant's eligibility for a mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(B)(v). Under § 841(b)(1)(B)(v), a defendant is subject to a mandatory minimum five-year term of imprisonment if he, *inter alia*, distributes "1 gram or more of a mixture or substance containing a detectable amount of" LSD. The Supreme Court had to decide whether the blotter paper and LSD distributed by the defendants constituted a "mixture or substance" for purposes of the statute.

The Court noted that, in addition to LSD, § 841 uses the statutory phrase "mixture or substance" in connection with a number of controlled substances, including methamphetamine, but does not define it. Using time-honored principles of statutory construction, the Court concluded that the words "mixture or substance" in § 841 had to be given their ordinary meaning because Congress did not provide a statutory definition. The Court determined:

> A "mixture" is defined to include "a portion of matter consisting of two or more components that do not bear a fixed proportion to one another and that however thoroughly commingled are regarded as retaining a separate existence." *Webster's Third New International Dictionary* 1449 (1986). A "mixture" may also consist of two substances blended together so that the particles of one are diffused among the particles of the other. 9 *Oxford English Dictionary* 921 (2d ed.1989).

*Chapman*, 500 U.S. at 462, 111 S.Ct. at 1926.

Applying these definitions, the Court concluded that blotter paper and LSD constitute a "mixture" under the plain meaning of that term because the LSD crystals are diffused among the fibers of the blotter paper. *Id.* Because the blotter paper and LSD weighed 5.7 grams, the defendants distributed "1 gram or more of a mixture or substance containing a detectable amount of" LSD. As a result, the defendants were subject to § 841(b)(1)(B)(v)'s mandatory minimum five-year term of imprisonment.

The Court concluded this result was consistent with the purpose of § 841, as ex-

---

creme liqueur and cocaine mixture); *United States v. Rodriguez*, 975 F.2d 999, 1007 (3d Cir. 1992) (in determining a defendant's sentence under § 2D1.1, exclude weight of unusable boric acid portion in boric acid and cocaine mixture); *United States v. Jennings*, 945 F.2d 129, 136–37 (6th Cir.1991) (in determining a defendant's sentence under § 841 and § 2D1.1, exclude weight of uningestible waste water in waste water and methamphetamine mixture); *United States v. Johnson*, 999 F.2d 1192, 1196–97 (7th Cir.1993) (in determining a defendant's sentence under § 2D1.1, exclude weight of unusable waste water in waste water and cocaine base mixture); *United States v. Rolande–Gabriel*, 938 F.2d 1231, 1237–38 (11th Cir.1991) (in determining a defendant's sentence under § 2D1.1, exclude weight of unusable waste water portion in cocaine and waste water mixture).

The Fifth and Ninth Circuits have followed the "marketable" approach in some cases, but adhered to the plain meaning of "mixture or substance" in others, depending upon the controlled substance at issue. *Compare United States v. Sherrod*, 964 F.2d 1501, 1509–10 (5th Cir.1992) (court should use entire weight of mixture of methamphetamine and waste water to determine defendant's sentence under § 2D1.1), *cert. denied*, 506 U.S. 1041, 113 S.Ct. 832, 121 L.Ed.2d 701 (1992), 507 U.S. 953, 113 S.Ct. 1367, 122 L.Ed.2d 745 (1993) *with United States v. Palacios–Molina*, 7 F.3d 49, 53–54 (5th Cir.1993) (court should exclude the waste water portion of cocaine and waste water mixture to fix a defendant's guidelines' sentence); and *compare United States v. Beltran–Felix*, 934 F.2d 1075, 1076 (9th Cir.1991) (court should use entire weight of methamphetamine and waste water mixture to calculate defendant's sentence under § 841), *cert. denied*, 502 U.S. 1065, 112 S.Ct. 955, 117 L.Ed.2d 123 (1992) *with United States v. Robins*, 967 F.2d 1387, 1389 (9th Cir.1992) (court should exclude the unusable cornmeal portion of a cocaine and cornmeal mixture in determining defendant's sentence under § 2D1.1).

pressed in the legislative history. The Court examined the legislative history and concluded that Congress adopted a " 'market-oriented' approach to punishing drug trafficking." *Id.* at 461, 111 S.Ct. at 1925. The Court noted that with respect to methamphetamine and PCP, Congress drafted § 841 to penalize drug offenders based not only on the weight of the "pure" drug, but also on the weight of a "mixture or substance containing a detectable amount of a" controlled substance. *Id.* at 459, 111 S.Ct. at 1924. The Court referred to Congress' approach under § 841 as "market-oriented" because it reflects the reality of the illicit drug marketplace. *See id.* at 465–66, 111 S.Ct. at 1927–28. That is, drug traffickers trade not only in "pure" drugs, but often mix drugs with cutting agents, carrier mediums, and other substances. *See id.* Congress' "street effective" solution sets penalties according to specified minimum quantities of a "mixture or substance" that would be indicative of a major trafficker, including a manufacturer or retailer:

> The Committee strongly believes that the Federal Government's most intense focus ought to be on major traffickers, the manufacturers or the heads of organizations, who are responsible for creating and delivering very large quantities of drugs. After consulting with a number of DEA agents and prosecutors about the distribution patterns for these various drugs, the Committee selected quantities of drugs which if possessed by an individual would likely be indicative of operating at such a high level. The Committee's statement of quantities is of mixtures ... that contain a detectable amount of the drug—these are not necessarily quantities of pure substance. One result of this *market-oriented approach* is that the Committee has not generally related these quantities to the number of doses of the drug that might be present in a given sample. The quantity is based on the minimum quantity that might be controlled or directed by a trafficker in a high place in the processing and distribution chain.

> The Committee determined that a second level of focus ought to be on the managers of the retail level traffic, the person who is filling the bags of heroin, packaging crack into vials or wrapping pcp in aluminum foil, and doing so in substantial street quantities. The Committee is calling such traffickers serious traffickers because they keep the street markets going.

H.R. Rep. 99–845, 99th Cong., 2d Sess. 12 (1986) (emphasis added). Congress did not make distinctions between kinds of mixtures; instead, it intended the "penalties for drug trafficking to be graduated according to the weight of the drugs in whatever form they were found—cut or uncut, pure or impure, ready for wholesale or ready for distribution at the retail level." *Chapman*, 500 U.S. at 461, 111 S.Ct. at 1925. Accordingly, the Supreme Court ruled that both the plain language of the statute and its legislative history demonstrate that the weight of an entire mixture or substance containing a detectable amount of a controlled substance determines a defendant's eligibility for a mandatory minimum sentence under § 841. *Id.* at 459–63, 111 S.Ct. at 1924–26. The Court did not rule, however, that only a usable, marketable, or consumable mixture constitutes a "mixture or substance" under § 841. In the Court's words, "[s]o long as it contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence." *Id.* at 459, 111 S.Ct. at 1924.

### C.

In *Neal v. United States,* —— U.S. ——, 116 S.Ct. 763, 133 L.Ed.2d 709 (1996), the Court reaffirmed that *Chapman* sets forth the governing definition of "mixture or substance" for purposes of § 841. In *Neal,* the Sentencing Commission amended the guidelines post-*Chapman* to revise the method of calculating the weight of LSD for purposes of sentencing under the guidelines. *Id.* at ——, 116 S.Ct. at 765. The defendant argued that the Sentencing Commission's revised definition controlled the mandatory-minimum sentence calculation under § 841(b). The Court rejected this argument, reiterating that *Chapman* defined the terms "mixture or substance" for purposes of § 841, and that "[o]nce we have determined a statute's meaning, we adhere to our ruling under the doc-

trine of *stare decisis,* and we assess an agency's later interpretation of the statute against that settled law." *Id.* at —— – ——, 116 S.Ct. at 768–69. The Court held that *Chapman*'s plain meaning interpretation of "mixture or substance" governs the determination of a defendant's statutory mandatory minimum sentence under § 841, even where the Sentencing Commission adopts a conflicting definition in the sentencing guidelines. *Id.* at —— – ——, 116 S.Ct. at 768–69; *see also United States v. Novey,* 78 F.3d 1483, 1486–87 (10th Cir.1996) ("Sentencing Commission does not have the authority to override or amend a statute."), *petition for cert. filed,* 64 U.S.L.W. 2627 (U.S. Apr. 29, 1996) (No. 95–8791).

### III.

### A.

■ *Chapman*'s plain-meaning interpretation of "mixture or substance" in § 841 governs our resolution of this case. *E.g., Johnson v. Sawyer,* 4 F.3d 369, 385 n. 82 (5th Cir.1993) ("This court is of course bound by the decisions of the United States Supreme Court regarding the interpretation of federal statutes."). Although the Court in *Chapman* specifically interpreted "mixture or substance" in 21 U.S.C. § 841(b)(1)(B)(v), its interpretation is not limited to that subsection. Under settled canons of statutory construction, we presume that identical terms in the same statute have the same meaning. *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 479, 112 S.Ct. 2589, 2596, 120 L.Ed.2d 379 (1992); *Boise Cascade Corp. v. United States EPA,* 942 F.2d 1427, 1432 (9th Cir.1991). Accordingly, the plain meaning of "mixture or substance" governs Defendant's mandatory minimum sentence calculation under § 841(b). *Chapman,* 500 U.S. at 461–62, 111 S.Ct. at 1925–26; *Neal,* —— U.S. at —— – ——, 116 S.Ct. at 768–69.

■ Applying the plain meaning of "mixture," the methamphetamine and liquid by-products Defendant possessed constitute "two substances blended together so that the particles of one are diffused among the particles of the other." *Chapman,* 500 U.S. at 462, 111 S.Ct. at 1926 (citing 9 *Oxford English Dictionary* 921 (2d ed.1989)). Liquid by-products containing methamphetamine therefore constitute a "mixture or substance containing a detectable amount of methamphetamine" for purposes of § 841(b). Defendant possessed a thirty-two kilogram mixture of methamphetamine and liquid by-products. Thus, Defendant possessed "1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine." 21 U.S.C. § 841(b)(1)(A)(viii). Under § 841, Defendant is subject to a mandatory minimum ten-year term of imprisonment. *Id.*[3]

### B.

Because the plain meaning of § 841 and Supreme Court precedent compel our holding, we reject Defendant's invitation to define the statute in accord with the Sentencing Commission's amendment under a "congruent" approach. The Sentencing Commission's amendment to U.S.S.G. § 2D1.1 did not, and could not, override or amend the statutory definition supplied by the Supreme Court. *Neal,* —— U.S. at —— – ——, 116 S.Ct. at 768–69; *Novey,* 78 F.3d at 1486–87. *Chapman*'s interpretation of § 841 controls. *Johnson,* 4 F.3d at 385.

We also reject Defendant's version of the "marketable" approach. Defendant relies on authority from the Second, Third, Sixth, Seventh, and Eleventh Circuits ruling that only usable or marketable portions of drug mixtures constitute "mixtures" for purposes of sentencing under § 841. *Acosta,* 963 F.2d at 553–54; *Rodriguez,* 975 F.2d at 1007; *Jennings,* 945 F.2d at 136–37; *Johnson,* 999 F.2d at 1196–97; *Rolande-Gabriel,* 938 F.2d

---

3. This is not a "rare case[]" where adhering to the plain language of § 841 "produce[s] a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989). As the Supreme Court recognized in *Chapman:* "It may be true that the weights of containers and packaging materials generally are not included in determining a sentence for drug distribution, but that is because those items are … clearly not mixed or otherwise combined with the drug." *Chapman,* 500 U.S. at 463, 111 S.Ct. at 1926. The instant case does not involve a "container" or "packaging materials."

at 1237–38. As we explained in *United States v. Killion*, 7 F.3d 927 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1106, 127 L.Ed.2d 418 (1994), "[t]hese courts reason that it is logical to include the weight of materials that are marketable or facilitate the marketability of the drug in question, and to exclude the weight of materials that do not." *Id.* at 932. The Second Circuit observed, "[v]iewed through a market-oriented prism, there is no difference in culpability between individuals bringing the identical amount and purity of drugs to market but concealing the drugs in different amounts of unusable mixtures." *Acosta*, 963 F.2d at 554.

In essence, Defendant contends that it is fairest to sentence based only on the marketable or usable portions of drug mixtures defendants bring to the marketplace. Congress, however, did not adopt this approach. One searches in vain to find the words "marketable," "usable," or "consumable" in the plain language of § 841 or its legislative history. Congress did not enact these concepts into the statutory scheme. Instead, Congress recognized the reality of the illicit drug market when it stated that a defendant is eligible for a mandatory minimum sentence if the defendant commits a drug offense involving a "mixture or substance containing a detectable amount of" a controlled substance. In no way did Congress limit § 841 to usable or marketable mixtures containing controlled substances. "Detectable amount," and not usable, marketable, or consumable, is therefore the hallmark of an § 841 "mixture or substance." *See Chapman*, 500 U.S. at 459, 111 S.Ct. at 1924 ("So long as it contains a detectable amount, the entire mixture or substance is to be weighed when calculating the sentence."). Hence, as long as the defendant possesses the specified quantity of a "mixture or substance containing a detectable amount of" a controlled substance, Congress requires a mandatory minimum sentence. Such a broad sentencing scheme may result in sentencing disparities. Policy decisions, however, vest in the legislative branch, not the judicial: "Congress, not this Court, has the responsibility for revising its statutes." *Neal*, —— U.S. at ——, 116 S.Ct. at 769. Accordingly, we reject Defendant's version of the "marketable" approach.

## IV.

In sum, Defendant possessed thirty-two kilograms of a "mixture or substance containing a detectable amount of methamphetamine" under § 841(b)(1)(A)(viii). Thus, Defendant possessed "1 kilogram or more of a mixture or substance containing a detectable amount of methamphetamine." 21 U.S.C. § 841(b)(1)(A)(viii). Defendant is therefore subject to a mandatory minimum ten-year term of imprisonment. The district court erred by reducing Defendant's sentence to 60 months imprisonment. The panel opinion at 67 F.3d 1531 is hereby VACATED. We REVERSE and REMAND to the district court with instructions to resentence Defendant in accordance with this opinion.

REVERSED and REMANDED.

SEYMOUR, Chief Judge, with whom PORFILIO and HENRY, Circuit Judges, join, dissenting.

The majority bases its construction of 21 U.S.C. § 841(b) upon its determination that the Supreme Court's ruling in *Chapman v. United States*, 500 U.S. 453, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991), governs this case. I agree with that premise, but not with the majority's reading of *Chapman*. The majority has divorced the holding in *Chapman* from its underlying circumstances and rationale, and has applied the holding to produce a result which in this case is directly at odds with that rationale. Because I agree with the majority of my sister circuits addressing the issue that Congress intended its reference to "mixture or substance" in section 841(b) to refer to a marketable or usable mixture, I dissent.

"Our job in construing statutes is to effectuate the intent reflected in the language of the enactment and the legislative process...." *State of Colorado v. Idarado Mining Co.*, 916 F.2d 1486, 1494 (10th Cir. 1990). Although a combination of methamphetamine and waste water fits within a dictionary definition of "mixture," we are not required to " 'produce a result demonstrably at odds with the intentions of [a statute's]

drafters.' "[4] *United States v. Ron Pair Enter., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)); *see also NLRB v. Lion Oil Co.,* 352 U.S. 282, 288, 77 S.Ct. 330, 333–34, 1 L.Ed.2d 331 (1957). The Court said in *Lion Oil Co.:*

> If the above words are read in complete isolation from their context in the Act, such an interpretation is possible. However, "In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." Moreover, in *Mastro Plastics* we cautioned against accepting a construction that "would produce incongruous results."

*Id.* at 288, 77 S.Ct. at 334 (quoting *Mastro Plastics Corp. v. NLRB,* 350 U.S. 270, 285, 286, 76 S.Ct. 349, 359, 360, 100 L.Ed. 309 (1956)) (citations omitted).

The Court in *Chapman* looked for Congress' intent in both the language of 21 U.S.C. § 841 and in its legislative history. *Chapman,* 500 U.S. at 460–61, 111 S.Ct. at 1924–25. The Court found that *"Congress adopted a 'market-oriented' approach* to punishing drug trafficking, under which the total quantity of what is distributed, rather than the amount of pure drug involved, is used to determine the length of the sentence." *Id.* at 461, 111 S.Ct. at 1925 (emphasis added). The Court said:

> *By measuring the quantity of the drugs according to the "street weight" of the drugs in the diluted form in which they are sold,* rather than according to the net weight of the active component, the statute ... increase[s] the penalty for persons who possess large quantities of drugs, regardless of their purity. *That is a rational sentencing scheme.*

This is as true with respect to LSD as it is with respect to other drugs. Although LSD is not sold by weight, but by dose, and *a carrier medium is not, strictly*

speaking, used to "dilute" the drug, that medium is used to facilitate the distribution of the drug. Blotter paper makes LSD easier to transport, store, conceal, and sell. *It is a tool of the trade for those who traffic in the drug,* and therefore it was rational for Congress to set penalties based on this chosen tool.

*Id.* at 465–66, 111 S.Ct. at 1927–28 (emphasis added). Accordingly, the Court held that "the statute requires the weight of the carrier medium to be included when determining the appropriate sentence for trafficking in LSD." *Id.* at 468, 111 S.Ct. at 1929.

In my judgment, *Chapman*'s recognition of Congress' "market-oriented" approach dictates that we not treat *unusable* drug mixtures as if they were usable. Here, as the majority points out, defendant pled guilty under 21 U.S.C. § 841(a), (b)(1)(A)(viii) to possession of 1000 grams or more of a liquid mixture containing a detectable amount of methamphetamine with intent to manufacture methamphetamine in powder form. Defendant was not intending to market the waste water, which would have been discarded in the manufacturing process. The waste water was neither a carrier medium for the distribution of methamphetamine nor a cutting agent.

Five circuits have distinguished between usable and unusable drug mixtures in interpreting "mixture" for purposes of section 841 and U.S.S.G. § 2D1.1. *See United States v. Acosta,* 963 F.2d 551, 554 (2d Cir.1992) ("[E]ven though the cocaine/creme liqueur may fall within the dictionary definition of 'mixture,' the legislative history convinces us that the weight of the creme liqueur must be excluded."); *United States v. Rodriguez,* 975 F.2d 999, 1007 (3d Cir.1992) ("We find that the usable/unusable differentiation adopted by the Second, Sixth, Ninth, and Eleventh Circuits, rather than the First Circuit approach, best follows the reasoning in *Chapman.*"); *United States v. Jennings,* 945 F.2d 129, 136 (6th Cir.1991) ("[I]nterpreting the statute to require inclusion of the entire

---

4. "Thus it is not enough for the judge just to use a dictionary. If he should do no more, he might come out with a result which every sensible man would recognize to be quite the opposite of what was really intended; which would contradict or leave unfulfilled its plain purpose." Learned Hand, *How Far Is a Judge Free in Rendering a Decision?, in The Spirit of Liberty,* 103, 106 (Irving Dilliard ed., 1952).

[mixture] for sentencing in this case would both produce an illogical result and be contrary to the legislative intent underlying the statute."); *United States v. Johnson,* 999 F.2d 1192, 1196 (7th Cir.1993) ("To read the statute or *Chapman* as requiring inclusion of the weight of *all* mixtures, whether or not they are usable, ingestible, or marketable, leads to absurd and irrational results contrary to congressional intent."); *United States v. Rolande–Gabriel,* 938 F.2d 1231, 1236 (11th Cir.1991) ("The Court in *Chapman* found that a plain meaning interpretation of "mixture" does not create an irrational result in the context of LSD and standard carrier mediums; however, in the present case it would be irrational for the court to fail to distinguish between usable and unusable drug mixtures . . . ."). *See also United States v. Palacios–Molina,* 7 F.3d 49, 53–54 (5th Cir.1993) (holding waste liquids in which cocaine was transported not a "mixture," and distinguishing prior Fifth Circuit authority). *But see United States v. Mahecha–Onofre,* 936 F.2d 623, 625–26 (1st Cir.), *cert. denied,* 502 U.S. 1009, 112 S.Ct. 648, 116 L.Ed.2d 665 (1991); *United States v. Sherrod,* 964 F.2d 1501, 1509–10 (5th Cir.1992); *United States v. Beltran–Felix,* 934 F.2d 1075, 1076 (9th Cir.1991). This usable/unusable distinction has been applied by two circuits in the context of methamphetamine in waste water, *see Jennings,* 945 F.2d 129; *United States v. Newsome,* 998 F.2d 1571 (11th Cir.1993), and by two circuits in the context of cocaine waste water, *see Johnson,* 999 F.2d 1192; *Palacios–Molina,* 7 F.3d 49.

This interpretation of "mixture or substance" for statutory purposes also would permit us to refer to the guideline definition and "adopt a congruent interpretation of the statutory term as an original matter." *United States v. Palacio,* 4 F.3d 150, 154 (2d Cir.1993). Congress created the Sentencing Commission in 1984 and charged it with the task of " 'establish[ing] sentencing policies and practices for the Federal criminal justice system.' " *Stinson v. United States,* 508 U.S. 36, 40–41, 113 S.Ct. 1913, 1916, 123 L.Ed.2d 598 (1993) (quoting 28 U.S.C. 991(b)(1)). Commentary promulgated by the Commission is authoritative "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, [the relevant] guideline." *Id.* at 38, 113 S.Ct. at 1915. Because of its sweeping authority and "significant discretion" in sentencing matters, *Mistretta v. United States,* 488 U.S. 361, 377, 109 S.Ct. 647, 657–58, 102 L.Ed.2d 714 (1989), we may draw on the Commission's interpretation of federal sentencing standards when endeavoring to reach our own interpretation of a sentencing statute.

The Sentencing Commission specifically addressed the current issue in its amended commentary to section 2D1.1 and unambiguously excluded the weight of waste water from the measurement of a "mixture or substance." U.S.S.G. § 2D1.1 comment. n. 1. The commentary provides:

> Mixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used. Examples of such materials include the fiberglass in a cocaine/fiberglass bonded suitcase, beeswax in a cocaine/beeswax statue, and waste water from an illicit laboratory used to manufacture a controlled substance.

*Id.*

Adopting an interpretation contrary to that of the Sentencing Commission for purposes of applying the statutory mandatory minimum will lead to unnecessary conflict and confusion. We have recognized the importance of harmonizing the statutory penalty provisions and the sentencing guidelines. *See United States v. Shewmaker,* 936 F.2d 1124, 1128 (10th Cir.1991), *cert. denied,* 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992); *see also United States v. Shorthouse,* 7 F.3d 149, 152 (9th Cir.1993) ("The statutory scheme of sentencing, including the [g]uidelines, must be construed harmoniously as a whole."), *cert. denied,* —— U.S. ——, 114 S.Ct. 1838, 128 L.Ed.2d 466 (1994). Furthermore, because the statutory mandatory minimum automatically becomes the guideline sentence when it is greater than the maximum of the applicable guideline range, *see* U.S.S.G. § 5G1.1(b), allowing waste water to

comprise a "mixture or substance" under the statute will effectively nullify the Commission's policy choice.[5] In light of this persuasive authority, I would hold that section 841 does not include the weight of waste by-products in the measurement of a "mixture or substance."

In deciding to the contrary, the majority relies upon the result in *Chapman* while rejecting *Chapman*'s conclusion that this result was the necessary product of Congress' decision to adopt "a 'market-oriented' approach to punishing drug trafficking." *Chapman*, 500 U.S. at 461, 111 S.Ct. at 1925. The majority disregards the Supreme Court's holding that the market approach drove Congress' drug sentencing scheme and makes it rationally based. *See id.* at 465–66, 111 S.Ct. at 1927–28. When section 841(b) is examined in light of this approach, it is clear that including a usable LSD carrier medium in the definition of "mixture or substance" furthers that approach, while including methamphetamine waste water does not. Accordingly, I respectfully dissent.

PORFILIO, Circuit Judge, dissenting.

I join the dissent of Chief Judge Seymour in all respects. Because I believe the majority has effectively reduced the precept of following the plain language of legislation to a mere shibolith, I write only to remind the court of the wise admonition of Learned Hand that "one of the surest indexes of a mature judiciary [is] not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2nd Cir.), aff'd. 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

---

5. In establishing the Sentencing Commission, Congress "sought reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders." U.S.S.G. Ch. 1, Part A.3 (policy statement).

In adopting the new commentary, the Commission attempted to implement this policy by eliminating highly disparate sentences for the same quantity of drugs. For example, prior to the new commentary, if a beeswax statue and an acrylic suitcase contained the same amount of cocaine but the suitcase weighed considerably more, the defendant with the suitcase would receive a much higher sentence. Under the new commentary, the defendants would be classified in the same sentencing range. If we adopt a conflicting interpretation of "mixture or substance," the mandatory minimum would still impose a significantly higher sentence on the defendant with the suitcase. *See also Chapman v. United States*, 500 U.S. 453, 458 n. 2, 111 S.Ct. 1919, 1924 n. 2, 114 L.Ed.2d 524 (1991) (detailing disparate sentences imposed under *Chapman* ).